Michael R. COULTER, Plaintiff,

v.

Margery S. BRONSTER, et al., Defendants.

No. Civ. 98–00343 ACK.

United States District Court, D. Hawaii.

May 25, 1999.

Michael R. Coulter, Haleiwa, HI, plaintiff pro se.

Pamela Keiko Matsukawa, Office of the Attorney General—State of Hawaii, Honolulu, HI, for Margery S. Bronster, Howard Gehring, Steven Thompson, Dept. of Land and Natural Resources, U.S., defendants.

W. Anthony Aguinaldo, Corporation Counsel, City & County of Honolulu, Honolulu, HI, for Honolulu, City and County of, State of Hawaii, defendants.

### ORDER: (1) GRANTING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (2) GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS WITH PREJUDICE; AND (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

Plaintiff filed a Complaint for Order/Judgment of 1) Preliminary Injunction; and 2) Permanent Injunction on April 29, 1998. Plaintiff alleges that State of Hawaii laws and administrative rules and City and County of Honolulu ordinances violate the Commerce Clause of the United States Constitution, admiralty law, federal statutes, treaties, international maritime conventions, and Plaintiff's rights, privileges, and immunities.

Plaintiff seeks to enjoin the State of Hawaii and City and County of Honolulu from the implementation or enforcement of any and all state statutes and city ordinances that may apply to the business that

Plaintiff claims to be developing, involving a commercial boating activity on the Ala Wai Canal. The Ala Wai Canal is an inland waterway on Oahu, approximately 1.8 miles long and 250 feet wide. Boating activities on the Ala Wai Canal and the Ala Wai Boat Harbor, which is adjacent to the canal, are under the jurisdiction of the Department of Land and Natural Resources ("DLNR"). To date, Plaintiff has not requested that the State of Hawaii, specifically the DLNR, review his proposed business in order to give the State of Hawaii an opportunity to determine whether the commercial boating activity would be permitted under state law. Plaintiff has not submitted an application or other formal request to the Boating Division for a permit or other authorization to conduct this activity. Instead, Plaintiff has assumed that such an activity would not be permitted under state law.

On March 29, 1999, the State Defendants ("Defendants") in this case filed the instant Motion for Summary Judgment. On that same day, Defendant City and County of Honolulu filed the instant Motion to Dismiss, or in the Alternative, for Summary Judgment. On May 10, 1999, Plaintiff filed his opposition to Defendants' motions.[1] On May 17, 1999, the State Defendants filed their reply. The Court heard oral argument on May 24, 1999.

## STANDARD OF REVIEW

### I. *Motion for Summary Judgment*

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv.*, 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any

---

**1.** In his opposition brief, Plaintiff also moves the Court to grant summary judgment in his favor.

disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

## II. *Motion to Dismiss*

Under Rule 12(b)(6), in determining whether a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini,* 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles,* 797 F.2d 743, 745 (9th Cir. 1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient

facts under a cognizable legal theory. *Balistreri,* 901 F.2d at 699; *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. *Id.*

■ A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as absolute immunity or the statute of limitations. 2A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice,* ¶ 12.07 at 12–68 to 12–69 (2d ed.1991 supp. 1191– 92) (citing *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).

## DISCUSSION

### I. *The Court is Without Jurisdiction Over Defendant Bronster*

Defendants first argue that the Court is without personal jurisdiction over Defendant Margery S. Bronster. The Court agrees. In *Benny v. Pipes,* the Ninth Circuit held:

> A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed.R.Civ.P.4.... [N]either actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without "substantial compliance with Rule 4." ... A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction.

799 F.2d 489, 491 (9th Cir.1986), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987) (internal citations omitted). Defendants have asserted that Margery S. Bronster was not served in this case. Although Plaintiff disputes this, the Court finds Defendants' assertion to be credible, and Plaintiff has presented no evidence to the contrary. Moreover, Defendants raised this issue in both their Answer and Amended Answer. The *Benny* case makes clear that these circumstances deprive the Court of personal jurisdiction over Defendant Bronster.[2]

## II. *The Eleventh Amendment Bars the Instant Suit Against the State of Hawaii and the DLNR*

■ Defendants next argue that the instant suit against the State of Hawaii and the Department of Land and Natural Resources is barred by the Eleventh Amendment of the United States Constitution. The Court again agrees with Defendants.

■ It is well settled that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.* at 89, 104 S.Ct. 900; *see also Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the

United States.'" This is true whether equitable relief or money damages are sought.[3] *See Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) ("[T]he Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity."); *Shaw v. State of California Department of Alcoholic Beverage Control,* 788 F.2d 600, 603 (9th Cir.1986).

■ This immunity also extends to state departments and agencies. *See Romano v. Bible,* 169 F.3d 1182, 1185 (9th Cir.1999) ("The Eleventh Amendment bars suits against the state or its agencies for all types of relief, absent unequivocal consent by the state."); *Natural Resources Defense Council v. California Dep't of Transp.,* 96 F.3d 420, 421 (9th Cir.1996) ("State immunity extends to state agencies [who can] assert the state's sovereign immunity."). Moreover, Eleventh Amendment immunity extends to admiralty and maritime cases. *See Welch v. Texas Dep't of Highways and Public Transp.,* 483 U.S. 468, 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) ("Even though the express terms of the Eleventh Amendment's prohibition are limited to federal-court suits 'in law or equity' against a State by citizens of another State or a foreign country, the Amendment . . . prohibits admiralty suits against a State . . . unless the State expressly waives its immunity and consents to suit in federal court."); *see also Collins v. Alaska,* 823 F.2d 329, 331 (9th Cir.1987).

■ "A state may waive its Eleventh Amendment immunity only by giving an unequivocal indication that it consents to suit in a federal court." *Charley's Taxi*

---

2. The Court also notes that in order to properly proceed against the Attorney General, Plaintiff would normally be required to substitute Defendant Bronster with her successor in office. However, as the Court finds that this case is appropriately decided on summary judgment, this substitution is rendered unnecessary.

3. The Court recognizes that the Ninth Circuit held in *Ulaleo v. Paty,* 902 F.2d 1395, 1398

(9th Cir.1990), that an individual may be entitled to prospective relief against an official acting in his official capacity if he is not fulfilling the law. *See also, Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Since Defendants have not asserted that Defendants Bronster and Gehring are entitled to Eleventh Amendment immunity, the Court does not engage in a further analysis of this issue.

*Radio Dispatch v. SIDA of Hawaii, Inc.,* 810 F.2d 869, 873 (9th Cir.1987). The State of Hawaii has asserted its constitutional immunity in the instant motion. Thus, it can hardly be said that it has given an "unequivocal indication" that it consents to suit. Furthermore, the only suits to which the State has consented are defined by Hawaii Revised Statutes Sections 661 and 662. *See Waugh v. University of Hawaii,* 63 Haw. 117, 125–26, 621 P.2d 957 (1980). Neither Section 661 nor 662 provides any authority for the proposition that Hawaii waived its sovereign immunity in suits dealing with boating activities on the State's inland waterways.

■■■■ Congress may, however, abrogate the State's sovereign immunity if it has "unequivocally expressed its intent to abrogate the immunity [and] has acted pursuant to a valid exercise of power." *Seminole Tribe of Florida,* 517 U.S. at 55, 116 S.Ct. 1114. "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Id.* at 56, 116 S.Ct. 1114. Plaintiff has failed to demonstrate that Congress expressed such an "unmistakably clear" intent to abrogate Hawaii's Eleventh Amendment immunity from suit. Likewise, the Court is unable to find any authority to support such a position. Accordingly, the Court finds that the State of Hawaii and the DLNR are immune from suit in this case.

### III. *Plaintiff Lacks Standing to Bring This Suit*

#### A. *General Standing Requirement*

Defendants next argue that summary judgment is appropriate because there is no "case or controversy" in the instant action, and Plaintiff therefore lacks standing. The Court agrees.

Federal courts may only hear cases in which there is an actual case or controversy. *See* U.S. Const. art. III, § 2. One of the key elements of this requirement is standing. As the United States Supreme Court explained in *Lujan v. Defenders of Wildlife:*

> [T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted); *see also Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("the injury alleged must be 'distinct and palpable,' and not 'abstract' or 'conjectural' or 'hypothetical[.]' ") (internal citations omitted). Here, Plaintiff has failed to meet these crucial requirements.

■■■ First, Plaintiff has failed to demonstrate an injury-in-fact. Based on his allegations, Plaintiff has no injury which is "distinct and palpable." *See Allen,* 468 U.S. at 751, 104 S.Ct. 3315. Rather, Plaintiff's alleged "injuries" are merely abstract, conjectural and hypothetical. He does not know the amount of financial losses that he alleges he will suffer if Defendants are not enjoined, and he has not demonstrated how those losses can be calculated. Furthermore, it appears that Plaintiff has not even discussed any potential for earnings with the tour companies and other entities that he alleges that he has preliminary agreements with. There-

fore, because Plaintiff has failed to demonstrate that he has suffered an "actual" injury, rather than a "hypothetical" one, he has failed to satisfy this first requirement for standing.

■ Second, Plaintiff has failed to demonstrate a causal connection between his injury and the conduct complained of. In other words, Plaintiff's hypothetical injury is not "traceable" to any action actually taken by Defendants. Rather, Plaintiff is only conjecturing as to how the Boating Division of the DLNR, the division that administers the regulation of the recreational boating program in the State, would rule on his proposed boating activity. Defendants claim that Plaintiff did not submit a written application or formal request for a permit or other authorization to conduct his alleged boating activity, and the Boating Division has no record of any application or other correspondence from Plaintiff. Plaintiff has failed to provide any evidence to the contrary. As such, Plaintiff has failed to satisfy the second standing requirement, as the Court finds that he has not demonstrated an injury which is fairly traceable to Defendants.

■ Finally, Plaintiff has failed to demonstrate that it is likely that his hypothetical injury will be redressed by a favorable decision. Even if the Court were to enjoin Defendants as Plaintiff requests, he has failed to show that his enterprise has any potential for success. Rather, since his enterprise is purely speculative at this point, it is highly possible that he may never be able to consummate the contracts with tour companies, other entities, and persons that he will need in order to succeed in his business.

Because Plaintiff has failed to satisfy the requirements outlined in *Lujan*, the Court finds that Plaintiff is without standing in this case.

### B. *Threat of Prosecution*

Plaintiff has also asserted that he faces a threat of prosecution, presumably to es-tablish standing on this ground. However, the Court finds that this basis for standing fails as well.

■ To establish standing under this theory, Plaintiff must demonstrate that he faces a "reasonable threat of prosecution for conduct allegedly protected by the Constitution." *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 625 n. 1, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). "[A] general threat of prosecution is not enough to confer standing." *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1127 (9th Cir.1996). For example, in *Poe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), the United States Supreme Court held that a mere allegation that the state attorney intended to prosecute any offense against Connecticut law, including the use of and advice concerning contraceptives, was held to be insufficient to confer standing upon a plaintiff who wished to engage in such activities. Likewise, in *Western Mining Council v. Watt*, 643 F.2d 618, 627 (9th Cir.1981), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981), the Ninth Circuit held that the Secretary of the Interior's statement that "plaintiffs cannot dig in the ground" was not a sufficient threat of prosecution to confer standing on plaintiffs to challenge the statute which prohibited such activity. Finally, in *Rincon Band of Mission Indians v. San Diego County*, 495 F.2d 1, 4 (9th Cir.1974), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974), the court held that a sheriff's statement to tribal members that a county ordinance prohibiting gambling would be enforced was insufficient to confer standing on tribal members who wished to set up a gaming house.

■ Here, Plaintiff has similarly failed to satisfy this standard. First, the conduct in which Plaintiff wishes to engage is not a "per se" proscribed activity. While Hawaii Revised Statutes Section 200–9(b) expressly prohibits commercial activities at the Ala Wai Boat Harbor, it does not expressly

prohibit such activities on the Ala Wai Canal. Furthermore, although administrative rules applying to the Ala Wai Boat Harbor may also apply to the Ala Wai Canal pursuant to Hawaii Administrative Rules § 13–231–77, none of those rules expressly prohibit all commercial activities in or on the water of the Ala Wai Canal. The extent to which these administrative rules are applicable to Plaintiff depends on the exact nature of his operation, which he has failed to communicate to Defendants.

Second, there is no viable threat of prosecution or enforcement in Plaintiff's immediate future. Although Plaintiff claims that he has been threatened with criminal prosecution, Defendants have assured the Court, through sworn affidavits, that the Boating Division's records contain no information of any arrest or prosecution of anyone based upon conducting a commercial boating activity in or on the Ala Wai Canal. *See* Affidavit of Howard Gehring at 3; Affidavit of Stephen Thompson at 3.

Finally, the Court finds that engaging in the activity at issue is not Plaintiff's only, nor should it be his first, option. As noted above, Plaintiff has not yet applied for a permit, nor has he formally requested that the DLNR evaluate his proposed boating enterprise. Should Plaintiff decide to do so, at most, he faces a denial of his application. Such a result is hardly synonymous with "prosecution."

In light of the foregoing, the Court finds that Plaintiff has failed to demonstrate "a reasonable threat of prosecution," as required by the United States Supreme Court. Instead, Plaintiff has merely asserted, at best, a "generalized" threat of prosecution, which, as the Ninth Circuit has made clear, is insufficient to confer standing. Accordingly, the Court finds that Plaintiff cannot establish standing on this basis.

#### C. *Futility*

■ Plaintiff next claims that he has repeatedly been told that applying for a permit would be "futile." To support his contention that such futility excuses his failure to apply for a permit, Plaintiff cites *Madsen v. Boise State University*, 976 F.2d 1219 (9th Cir.1992). However, *Madsen* actually provides further support for the Court's conclusion that Plaintiff is without standing in this case. As the Ninth Circuit stated in *Madsen:*

> There is a long line of cases ... that hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit.... Requiring a formal application as a condition for bringing a lawsuit ... serves the salutary objective of ensuring that only those individuals who cannot resolve their disputes without judicial intervention wind up in court.... The only remaining question is whether Madsen's case falls within that small class of cases where a formal application is unnecessary on the ground of futility. To begin with, it is unclear whether futility can, by itself, establish standing where it does not otherwise exist. It may well be that futility excuses some aspects of proving injury-in-fact while standing, a constitutional requirement, may not be so easily satisfied.

*Id.* at 1220–1222. *Madsen* illustrates the importance of applying for a permit in cases such as the one at bar, and the rarity of "futility" as justification for failing to do so. As noted above, Plaintiff has failed to apply for a permit, and has not yet discussed his proposed activities with the DLNR to enable the DLNR to determine whether those activities would be prohibited by Hawaii law. While Plaintiff may believe that doing so would be futile, such a belief is not sufficient, by itself, to confer standing upon Plaintiff.

#### III. *Plaintiff's Claims are Not Ripe*

■ The Court also finds that Plaintiff's claims are not ripe for adjudication. "Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of

judicial intervention." *Renne v. Geary,* 501 U.S. 312, 320, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991). "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). "When a plaintiff seeks to engage in conduct proscribed by statute and a credible threat of prosecution exists, he need not 'expose himself to actual arrest and prosecution to be entitled to challenge [the] statute[.]'" *San Francisco County Democratic Cent. Com. v. Eu,* 826 F.2d 814, 821 (9th Cir. 1987). "This is especially true in a First Amendment case because of the sensitive nature of constitutionally protected expression." *Eu,* 826 F.2d at 821 (internal quotation omitted). Nonetheless, "when plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt* 442 U.S. at 298–99, 99 S.Ct. 2301.

██ Here, the Court finds that Plaintiff does not face an immediate threat of prosecution or other injury. As noted repeatedly, Plaintiff has not applied for a permit to conduct his proposed business. Should he do so, at most he faces a denial of his application, which the Court has already recognized cannot be considered a form of "prosecution." In light of the above cases, the Court finds not only that Plaintiff lacks standing, but also that his case is not ripe for adjudication at this time.

## IV. *Plaintiff's Constitutional Argument is Without Merit*

Even if the Court were to find that Plaintiff has standing in this case, Plaintiff's argument that Hawaii regulations are preempted by, or conflict with, federal law is without merit. Accordingly, the Court finds that summary judgment for Defendants is also warranted on the merits of this case.

Plaintiff challenges the boating statutes and administrative rules which would purportedly prohibit him from conducting his business as being implicitly preempted by federal law. The essence of Plaintiff's challenge is that federal law is so comprehensive that it preempts the State of Hawaii's recreational boating regulatory scheme for its own inland waters. Furthermore, Plaintiff argues that Hawaii's statutes and rules conflict with federal law.

The State of Hawaii statutes addressing the ocean recreation and coastal areas programs of the State, including the ocean waters and navigable streams of the State except for the commercial harbors of the State, are found in Hawaii Revised Statutes chapter 200. These statutes are under the management and administration of the DLNR, headed by the Board of Land and Natural Resources. Jurisdiction over the navigable waters of the State, excluding the commercial harbors, was transferred by Act 272, 1991 Hawaii Session Laws 607 ("Act 272"), effective July 1, 1992, from the Department of Transportation ("DOT") to the DLNR. Section 28 of Act 272 provided that all administrative rules of the DOT would remain in full force and effect until amended or repealed by the Chairperson of the Board of Land and Natural Resources. The current administrative rules were adopted in 1994 by the DLNR, and were based upon the administrative rules of the DOT that remained in effect until that time. *See* HAR Title 13, chapter 231, historical note.

The statutes and administrative rules of the DOT that preceded the current rules adopted by the DLNR were the subject of litigation in *Barber v. State of Hawaii,* 42 F.3d 1185 (9th Cir.1994). The Court finds that the instant action is squarely governed by *Barber,* since the current rules of the DLNR were based upon the DOT rules at issue in that case, and further because the Ninth Circuit's analysis clearly extends to the provisions at issue here.

In *Hawaiian Navigable Waters Preservation Soc'y v. Hawaii*, 823 F.Supp. 766 (D.Haw.1993), the Hawaiian Navigable Waters Preservation Society ("Preservation Society") commenced its action challenging the constitutionality of all State of Hawaii regulations and legislation affecting the rights of mariners to anchor and navigate in the ocean waters surrounding the islands of Hawaii. Specifically, the Preservation Society argued that the regulations were constitutionally infirm, claiming that Congress has exclusive jurisdiction over matters of navigation and that Congress had explicitly and implicitly preempted Hawaii's comprehensive regulatory scheme. The Hawaii District Court consolidated the case with the *Barber* case and granted summary judgment in favor of the State of Hawaii and the federal government. The Ninth Circuit affirmed the district court's decision.

In the consolidated case, the Hawaii District Court first addressed preemption, observing that there "are two ways in which preemption can occur absent express language. First, Congress may implicitly occupy a field through pervasive regulation that leaves no room for supplemental action by the States. Second, federal law preempts local regulation where there is an actual conflict." *Id.* at 771. The court held, inter alia, that regulations and legislation affecting rights to anchor and navigate around the Hawaiian islands were not preempted by the Submerged Lands Act ("SLA"), "the act by which title to, and the power to manage, the lands beneath the navigable waters within the boundaries of the states were recognized as belonging to the respective states." *Id.* The court reasoned that, "[s]ince there is no evidence that Congress intended to occupy the entire field of navigation, and significant evidence to the contrary, and since there is no actual conflict between the Hawaii regulations and federal law, the Hawaii regulatory scheme is not preempted by federal law." *Id.* at 774.

On appeal, the Ninth Circuit first noted that implicit preemption exists "where the intent of Congress is clearly manifested, or implicit from a pervasive scheme of federal regulation that leaves no room for state and local supplementation, or implicit from the fact that the federal law touches a field (e.g. foreign affairs) in which 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Barber*, 42 F.3d at 1189. The Ninth Circuit found that Congress had not preempted the field of navigation, holding that "Congressional intent to preempt state action [in the area of navigation] is far from clearly manifest, federal regulation has not occupied the field of navigation and the federal interest in navigation is not so dominant as the Preservation Society implies. There is no implicit preemption." *Id.* The Court confirmed that the purpose of the SLA "was not for the Federal Government to retain exclusive jurisdiction over navigation of the waters above the submerged lands, but for the Federal Government to retain concurrent jurisdiction over those waters. The plain language of Section 1311(d) does not indicate that Congress intended federal jurisdiction to be exclusive rather than concurrent." *Id.* at 1191 (footnote omitted).

After discussing the preemption issue, the district court then addressed whether or not Hawaii's regulations implicated the Commerce Clause. In holding that they did not, the court stated:

> Although this court is convinced that Congress has the power under the commerce clause to regulate commerce involving navigable and international waters, this court does not find that this necessarily prohibits the State of Hawaii from regulating commerce between places within the state solely because it involves such waters[.]

*Hawaiian Navigable Waters*, 823 F.Supp. at 775. The Ninth Circuit similarly held on appeal that Hawaii's regulations did not

violate the Commerce Clause. *See Barber,* 42 F.3d at 1194.

 Like the Ninth Circuit's ruling in *Barber,* the Court finds that there is no federal preemption in this case. Plaintiff has failed to demonstrate that Congress intended to occupy the entire field of navigation, and in light of *Barber,* the Court finds that there is significant evidence to the contrary. Moreover, the Court finds that there is no actual conflict between the Hawaii regulations and federal law, and further finds that the Hawaii regulatory scheme does not implicate the Commerce Clause. As such, the Court finds that Hawaii regulatory scheme is not preempted by federal law. Accordingly, the Court finds that summary judgment for Defendants is warranted.

### V. *Defendant City and County of Honolulu's Motion to Dismiss*

Defendant City and County of Honolulu has represented to the Court that it does not have the authority to, and in fact does not, regulate boating activity on the Ala Wai Canal. Instead, Defendant City and County of Honolulu has indicated, and the State Defendants have verified, that the DLNR and the U.S. Federal Government have exclusive regulatory authority over boating activities in Hawaii. *See* HRS § 200–2; *see also* Affidavit of Howard Gehring at 2. Although Plaintiff "generally and specifically denies each and every purported Statement of Fact submitted by all defendants," and although Plaintiff claims that he has been informed by Honolulu Police Officers to the contrary, he has failed to sufficiently refute Defendant City and County of Honolulu's contentions. Furthermore, to the extent that the City and County of Honolulu may be responsible for enforcement of the regulations at issue, the Court has already held that Plaintiff's claim fails both procedurally and substantively. Therefore, the Court need not address the extent of Defendant City and County of Honolulu's enforcement of those regulations. Accordingly, the Court finds that dismissal is appropriate, and hereby GRANTS Defendant City and County of Honolulu's Motion to Dismiss WITH PREJUDICE.

### CONCLUSION

It may well be that, in light of Hawaii's foundering economy in recent years, it would be in the State's best interest to allow Plaintiff and others like him to have limited use of the Ala Wai Canal for creative enterprises such as the one proposed in this case. However, as explained in the Court's Order, Plaintiff's position fails both procedurally and substantively. Accordingly, the Court GRANTS State Defendants' Motion for Summary Judgment. The Court further GRANTS Defendant City and County of Honolulu's Motion to Dismiss WITH PREJUDICE. In light of the Court's ruling, the Court further DENIES Plaintiff's motion for summary judgment.

IT IS SO ORDERED.